THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANCIS M. ECKLES, Defendant-Appellant.

Third District   No. 3—83—0660

Opinion filed October 29, 1984.

ALLOY, P.J., dissenting.

Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

James T. Teros, State's Attorney, of Rock Island (John X. Breslin and John M. Wood, both of State's Attorneys Appellate Service Commission, of

counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

The defendant, Francis Eckles, appeals from his conviction for the offense of residential burglary. He was sentenced to a term of five years' imprisonment.

The issue on appeal is whether the defendant's confession was involuntary, and whether the court erred in finding it voluntary and admitting it into evidence. The defendant argues that the confession was rendered involuntary as a result of a promise of leniency given the defendant prior to his admissions.

Two witnesses testified at the suppression hearing. The defendant testified that the evening prior to his interrogation he was picked up by police while standing with a friend on the street. He was asked to get in the back seat of the squad car and did so. As the officer drove toward the police station he received a radio message indicating that the defendant was to come to the police station the next day to answer questions about a residential burglary. The defendant was released from the car.

The following day the defendant went to the police station. Officer Michael Lage asked the defendant whether he was involved in a burglary and said that the police had a witness who had implicated the defendant. The defendant denied any involvement.

Lage testified that when the defendant continued to deny any involvement, he told him that an investigation would be made of the burglary and that the defendant should tell if he was involved in the burglary and not wait. Lage told the defendant that it would be in his (defendant's) best interests to get the truth out as fast as possible. Officer Lage also told the defendant that if he told the truth and cooperated, Lage would inform the State's Attorney and testify in court as to the defendant's cooperation. Shortly after, the defendant admitted his participation in the burglary. He was then advised of his rights, waived them, and made a tape-recorded statement admitting to the burglary.

The trial court is in the best position to determine the voluntariness of a confession, and its determination will not be reversed unless contrary to the manifest weight of the evidence. Relying on *People v. Heide* (1922), 302 Ill. 624, and *People v. Ruegger* (1975), 32 Ill. App. 3d 765, the defendant argues that his confession was compelled by a promise of leniency.

Officer Lage first told the defendant that it would be in his best interest to get the truth out as quickly as possible. Based on *Heide*,

the defendant characterizes this exhortation as an implied promise of leniency. At first glance, *Heide* appears to hold that use of the words "you had better" or "you would be better off" carries the implication that the accused would be treated better if he made a statement. However, later cases have rejected this interpretation.

In *People v. Klyczek* (1923), 307 Ill. 150, the supreme court held that:

> "It is not reasonable to suppose that advice to one accused of crime that it is better for him to tell the truth would of itself be an inducement to him to tell an untruth or would alone be a sufficient inducement to make a statement falsely confessing crime. Mere exhortation to tell the truth will not make a confession afterward made inadmissible, but the statement that it is better to tell the truth may be made under such circumstances as to make a confession afterwards made incompetent. If there is coupled with the advice a suggestion of a benefit in the particular case, a confession by reason of such advice and suggestion is incompetent." 307 Ill. 150, 154.

Standing alone, Officer Lage's advice to the defendant is insignificant. In order to constitute a promise of leniency, his statements must be coupled with a suggestion of a specific benefit which would follow if the defendant confessed. *People v. Ardelean* (1938), 368 Ill. 274; *People v. Joe* (1964), 31 Ill. 2d 220.

It is true that Officer Lage also told the defendant that he would inform the State's Attorney and the court of the defendant's cooperation. However, in *People v. Hubbard* (1973), 55 Ill. 2d 142, the supreme court rejected the argument that this type of statement was a promise of leniency. The import of *Hubbard* is that such an offer does not imply that the State's Attorney will be lenient simply because he is made aware of the defendant's cooperation.

*People v. Ruegger* (1975), 32 Ill. App. 3d 765, also cited by the defendant, is in no way similar to this case. In *Ruegger* the police advised the defendant to tell the truth and offered to "go to bat for him" on such matters as a recognizance bond and probation if he confessed. This was a specific promise of special treatment as contemplated by the cases interpreting *Heide*. A promise to assist a defendant in obtaining bond and a sentence of probation is vastly different from an offer to simply inform the prosecutor and the court of a defendant's cooperation. The latter offer is open-ended, with no promise of a specific result.

The ultimate question to be answered here is whether, considering the totality of attendant circumstances, the defendant's will was over-

come at the time he confessed. (*People v. Noe* (1980), 86 Ill. App. 3d 762, 765.) Case law clearly indicates that Officer Lage's statements cannot be reasonably construed as improper inducements. The remaining factors such as the defendant's age, intelligence, experience and the intensity of his interrogation do not show that the defendant's will was overcome at the time he confessed.

The defendant was questioned for approximately 25 to 35 minutes, which can hardly be described as an intense interrogation. Although the defendant was only 19 years old, with a ninth-grade education, there is no evidence that he possessed a subnormal I.Q. Standing alone, these factors do not render the defendant's confession involuntary.

Based on the foregoing, we find that the defendant made a voluntary confession and that the trial court did not err in admitting the statement. The judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

BARRY, J., concurs.

PRESIDING JUSTICE ALLOY, dissenting:
I respectfully dissent.

In the instant case, the trial judge noted that the question of voluntariness was a close one. Pertinent facts were produced at a pretrial suppression hearing on the question of the confession's voluntariness. Two witnesses testified at the hearing: Michael Lage, a Rock Island police investigator, and the defendant, Francis Eckles. The defendant testified that the evening prior to his interrogation he was picked up by police while standing with a friend on the street. He was asked to get in the back seat of the squad car and did so. As the officer drove toward the police station he received a radio message indicating that the defendant was to come to the police station the next day to answer questions about a residential burglary. The defendant was released from the car. The defendant testified that he felt the police would issue a warrant for his arrest if he did not go to the station the next day.

He arrived at the station in the afternoon of the following day, where Detective Lage met him and took him to a small room. Lage did not advise him that he was under arrest.

Both Lage and defendant Eckles testified that Lage asked Eckles whether he was involved in the burglary and further informed Eckles

that they had a witness who said he was involved. Eckles denied any involvement in the burglary at least three times. Lage testified that when the defendant continued to deny any involvement, he told the defendant that an investigation would be made of the burglary. He informed Eckles that he should tell if he was involved in the burglary and not wait. He told Eckles that it would in his (defendant's) best interests to get the truth out as fast as possible. Lage and the defendant both testified about a promise made by Lage to defendant. Detective Lage told Eckles that if he (Eckles) told the truth and cooperated, Lage would inform the State's Attorney and testify in court as to his cooperation. Shortly after, the defendant admitted his participation in the burglary. He was then advised of his rights, waived them, and made a tape-recorded statement admitting to the burglary.

The defendant's testimony was that he stopped denying involvement in the burglary and made his admissions because of the promise by Lage to go to court and testify about his cooperation. The defendant, at the time, was 19 years old, with a ninth-grade education. His testimony was that he felt Lage's help might make things go easier for him. It was disputed as to whether Lage also said that they would be lenient with Eckles if he confessed. Lage denied making that statement.

The court took the suppression motion under advisement, noting it was "an extremely close case." The motion was later denied, the court determining the confession was voluntary.

The issue is the voluntariness of the confession. While we are generally reluctant to overturn the decision of the trial court on matters of this nature, because of the superior position that court is in to determine credibility and weight, in the instant case the record is clear and largely undisputed. Both Lage and defendant Eckles indicated that Eckles initially denied any involvement, but changed his mind and confessed after Lage had exhorted him that it would be in his best interests to tell the truth *and* promised him that he would inform the State's Attorney of his cooperation *and* testify for him in court. Regardless of whether Lage expressly mentioned that leniency would result from the defendant's cooperation, the clear import of his promises was that lenient treatment would likely follow if he gave a statement. Furthermore, the record indicates that the defendant's decision to confess was in large part in response to the encouragement from Detective Lage. In *People v. Heide* (1922), 302 Ill. 624, 628-29, 135 N.E.2d 77, the Illinois Supreme Court detailed the effects of such promises:

"The natural effect on the minds of the plaintiffs in error of

such statements [to tell the truth and State's Attorney might show leniency] by the officers would be to cause them to feel that they were being advised to speak, and that if they told the truth they would be taken to the State's Attorney's office and allowed to make a statement, and then whatever he did for them would be better for them on account of their telling the truth."

In *People v. Ruegger* (1975), 32 Ill. App. 3d 765, 336 N.E.2d 50, the court relied upon the rule enunciated in *Heide* in affirming the trial court's conclusion that a confession to police, after statements from them that they would "go to bat" for the defendant, was involuntary. (32 Ill. App. 3d 765, 771.) We are mindful that voluntariness must be determined from the totality of the circumstances, and that other factors, including age, intelligence, experience, length of time and intensity of interrogation, as well as prior refusals to answer questions, are to be considered. Yet, in the instant case, consideration of those factors indicates the involuntariness of the statements made by defendant. He had previously refused to answer questions about any involvement. Only after the inducement by Detective Lage, holding forth the promise of lenient treatment and his own willingness to testify for him at court, did the defendant confess. Further, this defendant was 19 at the time, with only a ninth-grade education. Given these factors, and the lack of others indicating voluntariness, I would find that the trial court was in error in concluding that the confession was voluntarily made by Eckles.

The conclusion that *People v. Hubbard* (1973), 55 Ill. 2d 142, 302 N.E.2d 609, controls the instant case must be rejected. The issue in *Hubbard* received a two-sentence treatment. (55 Ill. 2d 142, 152.) Moreover, in *Hubbard*, the facts indicated that the defendant's initial statements came before any promises or suggestions of leniency and the defendant, in his statement, stated that no promises had been made of any kind. (55 Ill. 2d 142, 149-50.) As to other cases cited by the State, it is sufficient to point out that this case involves more than the mere exhortation to tell the truth and more than unsubstantiated hope by the defendant that his cooperation will be reciprocated by lenient treatment. As detailed previously, the officer here promised to speak to the State's Attorney on the defendant's behalf, and to testify in court. Accordingly, I would find the court erred in its conclusion that the defendant's statement was voluntarily given, and I would reverse the conviction.