THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL PINKHAM, Defendant-Appellant.

Second District   No. 82—1008

Opinion filed December 30, 1985.

Michael M. Melius, Public Defender, of Waukegan, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Virginia M. Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE NASH delivered the opinion of the court:

Defendant, Michael Pinkham, was convicted in a bench trial of residential burglary and aggravated battery and was sentenced to concurrent terms of 10 years' imprisonment. He appeals, contending that the circuit court erred in denying his motion to suppress his confession on the grounds that his statements were induced by threats and by promises of leniency and that they were elicited despite his requests for counsel.

At the pretrial hearing of defendant's motion to suppress, Detective Richard Whitmore testified that on May 9, 1982, he questioned defendant at the scene of a residential burglary and that Detective Curt Corsi was present during the questioning. Defendant was given the *Miranda* warnings, which he said he understood, and then made a statement. Defendant never indicated that he wished to remain silent or wanted an attorney. Whitmore could not recall whether, at any time, he had left the squad car and Corsi might have questioned the defendant; and he denied telling defendant that he should make it easy on himself and the officers by telling the truth and that if he made it easy for them, they would make it easy for defendant.

Detective Curt Corsi testified that he was in the squad car when defendant was given the *Miranda* warnings. Defendant said nothing about wanting an attorney, and Corsi could not recall anyone telling defendant that if he cooperated it would be easier on him. Corsi stated that defendant said he would rather talk to Corsi than to Whitmore, whereupon Whitmore left the squad car and Corsi told defendant that, as it made no difference, he might as well talk to Whitmore. When Whitmore returned, Corsi left, and so did not hear defendant's statement. On cross-examination, Corsi stated that he heard Whitmore tell defendant that it would go easier on him if he cooperated and told the truth, and also that defendant would be charged with attempt murder and, if the victim died, murder.

Defendant testified that after Whitmore read him his rights he said he would like a lawyer, and Whitmore said, "Well, if you make everything easy for us, we can bring down the charges to burglary and we'll help you out in court as best we can." Whitmore also told him the victim was in "real bad shape" and that defendant could face attempt murder and, if the victim died, murder. According to defendant, Whitmore left the squad car and another officer got in and told defendant not to worry because Whitmore was just a "hothead." Defendant explained that he wanted to talk to this officer because he was "more civil" to him, but he was told he had to talk to Whitmore. When Whitmore returned, he again told defendant to tell the truth

and things would be easier, so defendant told him what happened. Defendant further testified that at the station he was given a form containing a series of rights waivers; however, the contents were not explained to him and he did not complete this part of the form until after he wrote out his statement. The trial court denied defendant's motion to suppress his statement.

In the trial, Detective Whitmore testified that at the scene defendant told him he had broken into the house on Andyville Road, was startled by a person in the house, and hit her once or twice with a stick he was carrying. At the station, Whitmore again read defendant his rights and defendant signed a rights waiver form. Then, Whitmore gave defendant what is described in the record as a statement form, which again set forth the *Miranda* rights and contained the question, "Do you wish an attorney?" to which defendant wrote his answer, "Yes, when I go to court." After that defendant wrote a 1½-page statement relating to the offense. On cross-examination, Detective Whitmore explained that when defendant completed the entire statement form, Whitmore went over it with him and asked him if he wanted an attorney "right now," to which defendant replied, "No. I want an attorney when I go to court." Whitmore asked defendant if he would write that in the statement and defendant did so.

Defendant testified in trial that he had asked for a lawyer before he gave each of the statements. He also stated that he had completed the form containing the series of rights waivers before he wrote out his narrative statement.

Defendant contends on appeal that he was deprived of counsel during questioning. At the hearing of the motion to suppress defendant testified that he requested counsel each time he gave a statement. Detectives Whitmore and Corsi, however, testified that defendant never indicated he wanted an attorney. In denying the motion, the trial judge expressed his disbelief in defendant's assertions that he had requested counsel.

■■ ■ In a hearing on a motion to suppress, it is the province of the trial court to determine the credibility of witnesses and the weight to accord their testimony (*People v. Thompson* (1984), 125 Ill. App. 3d 665, 682, 466 N.E.2d 380; *People v. Winston* (1982), 106 Ill. App. 3d 673, 683, 435 N.E.2d 1327, *appeal denied* (1982), 91 Ill. 2d 580). The trial court, as trier of fact, is not required to accept the defendant's testimony. (*People v. Drake* (1985), 131 Ill. App. 3d 466, 472, 475 N.E.2d 1018; *People v. Fender* (1980), 91 Ill. App. 3d 844, 846, 415 N.E.2d 22.) Its findings should not be disturbed unless contrary to the manifest weight of the evidence. (*People v. Eckles* (1984),

128 Ill. App. 3d 276, 277, 470 N.E.2d 623, *appeal denied* (1985), 101 Ill. 2d 591.) Under *Miranda v. Arizona* (1966), 384 U.S. 436, 444-45, 16 L. Ed. 2d 694, 707, 86 S. Ct. 1602, 1612, where a defendant asserts "in any manner" his right to counsel, he has effectively invoked that right. Our supreme court has refused to interpret this language to include every vague, indecisive or ambiguous reference to an attorney. *People v. Krueger* (1980), 82 Ill. 2d 305, 311, 412 N.E.2d 537, *cert. denied* (1981), 451 U.S. 1019, 69 L. Ed. 2d 390, 101 S. Ct. 3009.

In the present case, the record discloses that defendant was advised of his right to counsel before he made his statements, and both officers who testified contradicted defendant's assertion that he requested counsel.

■ The record also shows that defendant signed a rights waiver form which contained the advisement that he was entitled to counsel during questioning and that he signed a statement form, which again set forth the *Miranda* rights and an explicit waiver of them. Detective Whitmore testified that he asked defendant if he wanted an attorney but that defendant replied, "No. I want an attorney when I go to court." This testimony is supported by the statement form containing defendant's handwritten response to the same effect. In light of defendant's negative response to the offer of counsel during questioning, and his explanation that he only wanted counsel in court, the trial judge's finding that defendant had not requested counsel was not against the manifest weight of the evidence.

■ We next address defendant's contention that his confession was involuntary because Detective Whitmore threatened him with a murder charge and promised that it would go easier on him if he told the truth. The trial judge found that no promises or inducements were made.

The trial judge is in the best position to observe the demeanor of witnesses, hear their testimony and evaluate the evidence going to the voluntariness of a confession. (*People v. Eckles* (1984), 128 Ill. App. 3d 276, 277, 470 N.E.2d 623, *appeal denied* (1985), 101 Ill. 2d 591; *People v. Starling* (1978), 64 Ill. App. 3d 671, 675, 381 N.E.2d 817, *appeal denied* (1978), 72 Ill. 2d 584.) Minor inconsistencies in the testimony of the State's witnesses do not destroy the credibility of those witnesses, and any variations in the testimony are for the trier of fact to weigh. *People v. Jordan* (1967), 38 Ill. 2d 83, 87-88, 230 N.E.2d 161; *People v. Talach* (1983), 114 Ill. App. 3d 813, 820, 448 N.E.2d 638.

■ In the present case, both detectives, who were present at the time the *Miranda* warnings were given and the alleged inducements

were made, testified that defendant never indicated he wished to remain silent or to have an attorney and that no threats or promises were made to him. The trial judge evidently believed Detective Whitmore's version of the facts over that of the defendant, which it is the judge's prerogative to do. (*People v. Drake* (1985), 131 Ill. App. 3d 466, 472, 475 N.E.2d 1018; *People v. Fender* (1980), 91 Ill. App. 3d 844, 846, 415 N.E.2d 22.) The trial judge did not explain how he resolved minor discrepancies in the detectives' testimony, and we will not require him to do so, since, in a bench trial, questions of credibility are within the province of the judge to decide. *People v. Woods* (1980), 81 Ill. 2d 537, 542, 410 N.E.2d 866; *People v. Ingram* (1983), 114 Ill. App. 3d 740, 744-45, 449 N.E.2d 564.

■ Even if Detective Whitmore had made the alleged statements, they would not render defendant's confession involuntary. Statements to the effect that it will go easier for an accused if he tells the truth do not constitute promises of leniency unless they are accompanied by a specific promise of special treatment. (*People v. Eckles* (1984), 128 Ill. App. 3d 276, 278, 470 N.E.2d 623, *appeal denied* (1985), 101 Ill. 2d 591; see also *People v. Hartgraves* (1964), 31 Ill. 2d 375, 381, 202 N.E.2d 33, *cert. denied* (1965), 380 U.S. 961, 14 L. Ed. 2d 152, 85 S. Ct. 1104; *People v. Makes* (1981), 103 Ill. App. 3d 232, 240, 431 N.E.2d 20, *appeal denied* (1982), 91 Ill. 2d 563; *People v. Stevens* (1981), 98 Ill. App. 3d 158, 165-66, 423 N.E.2d 1340.) Also, a truthful representation to defendant about the possibility of a murder charge in the event the 90-year old victim died would not have been inherently coercive. See, *i.e., People v. Gamble* (1976), 41 Ill. App. 3d 394, 402, 353 N.E.2d 136; *People v. Griffith* (1976), 40 Ill. App. 3d 690, 694, 353 N.E.2d 53, *appeal denied* (1976), 64 Ill. 2d 597.

■ The trial court's determination of the voluntariness of a confession must be based on the totality of the circumstances (*People v. Prude* (1977), 66 Ill. 2d 470, 475, 363 N.E.2d 371, *cert. denied* (1977), 434 U.S. 930, 54 L. Ed. 2d 291, 98 S. Ct. 418), the ultimate question being whether the defendant's will was overcome at the time he confessed. (*People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.) A confession is admissible if its voluntariness is proved by a preponderance of the evidence. *People v. Noe* (1980), 86 Ill. App. 3d 762, 765, 408 N.E.2d 483.

■ The record shows that defendant is a bright young man who was attending junior college at the time of the offense. He returned to the scene voluntarily, accompanied by his mother, to talk with the officers, who advised defendant of his *Miranda* rights, which he

waived; defendant was not abused physically or psychologically.

Although defendant asserts that the officers utilized the classic "Mutt and Jeff" routine in order to extract a statement from him, our examination of the record reveals no such scenario. The Supreme Court in *Miranda v. Arizona* (1966), 384 U.S. 436, 452, 16 L. Ed. 2d 694, 711, 86 S. Ct. 1602, 1616, condemned the practice wherein a kindhearted investigator wrests a statement from a suspect while ostensibly holding a more ruthless investigator at bay; however, the defendant in the present case was not so coerced into making a statement. Considering these circumstances, the trial court did not err in denying defendant's motion to suppress.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

HOPF and LINDBERG, JJ., concur.